# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| RHONDA SMITH. <br><br>           Plaintiff, <br><br>      v. <br><br> LORETTA LYNCH,[1] <br> *Attorney General of the United States*, <br><br>           Defendant. | Civil Action No. 10-1302  (BAH) <br><br> Judge Beryl A. Howell |

## <u>MEMORANDUM OPINION</u>

This Court entered a Memorandum Opinion ("Mem. Op."), ECF No. 71, and accompanying Order, ECF No. 72, granting summary judgment to the defendant in this action on May 13, 2015.  Now pending before the Court is the plaintiff's Motion to Alter or Amend Order Granting Defendant's Motion for Summary Judgment ("Pl.'s Mot."), ECF No. 73.  For the reasons set forth below, the motion is denied.

## I.    BACKGROUND

The pertinent facts of this case were adequately explained in the Mem. Op and need not be repeated here.  *See Smith v. Lynch*, No. 10-1302, 2015 WL 2265100, at *1–11 (D.D.C. May 13, 2015).  In short, the plaintiff, who is an African American employee of the U.S. Department of Justice, alleges that she was subjected to discrimination, a hostile work environment, and retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, based upon her race

---

[1] The plaintiff originally named former Attorney General Eric Holder, Jr. as the defendant in this case.  Pursuant to Federal Rule of Civil Procedure 25(d), his successor, Loretta Lynch, is automatically substituted as the new defendant.

and alleged disability of right-hand Carpal Tunnel Syndrome ("CTS").  *Id.* at *1.  This Court

held, with respect to the plaintiff's Rehabilitation Act claims, in Counts II and IV of the

Complaint, that (1) the plaintiff was not disabled within the meaning of the Rehabilitation Act in

effect when the plaintiff was allegedly held responsible for co-workers' assignments, *id*. at *4;

given discriminatory work assignments, *id.* at *4–5; denied advance sick leave, *id.* at *5–8;

charged with tardiness, *id.* at *8; and bumped by her supervisor, *id.* at *8–9, all of which events

occurred in 2007, *id.* at 4–9; *id.* at 19 (holding that plaintiff was not "disabled" within the

meaning of the pre-ADA Amendments[2] Rehabilitation Act); (2) the plaintiff failed to exhaust her

administrative remedies, as required by statute, for any events that occurred after the operative

definition of disability under the Rehabilitation Act changed on January 1, 2009, *id.* at 19–20 and

n.24;[3] and (3), consequently, the plaintiff's Rehabilitation Act claims based on alleged

discrimination, hostile work environment, and retaliation failed, *id.* at 20.

　　With respect to the plaintiff's Title VII race discrimination claims, in Counts I and III of

the Complaint, the Court held that the plaintiff failed to provide any admissible evidence

sufficient to create a triable issue regarding whether she was treated differently from non-

African-American employees or whether the defendant's treatment of her was motivated, in any

---

[2] "[W]hat constitutes a 'disability' under the Rehabilitation Act changed on January 1, 2009, when Congressional amendments to the ADA went into effect."  *Smith*, 2015 WL 2265100, at *17.  These amendments (the "ADA Amendments") "reinstat[ed] a broad scope of protection under the ADA and [rejected] the holdings in" two Supreme Court cases that interpreted the previous version of the ADA.  *Id.* (quoting *Lytes v. D.C. Water & Sewer Auth.*, 572 F.3d 936, 939 (D.C. Cir. 2009) (alterations in original).  The Rehabilitation Act generally incorporates the standards of the ADA and shares the identical definition of "disability."  29 U.S.C. § 794(d).

[3] The plaintiff did not distinguish the events she alleged constituted a hostile work environment based on her race from those based on her disability, *see generally* Pl.'s Opp'n Def.'s Mot. Summ. J. ("Pl.'s MSJ Opp'n"), ECF No. 59-1, but based on the substance of those allegations, at least two of the four post-2008 events alleged plainly pertain exclusively to her disability claim: the plaintiff alleges that the defendant failed to offer reasonable accommodations and failed to honor her doctor's restrictions on her activities in 2009 and 2010.  *Id.* at 17–19.  The remaining two events alleged are ambiguous as to the claim to which they relate.  The plaintiff claims "she felt singled out because of her [2007] EEO complaint and request for accommodations" when, on October 9–10, 2009, the plaintiff was ordered to be at her desk at the start of her shift and to notify a supervisor when she left the building, *id.* at 19–20, and that the Agency examined "her personal hard drive at work" on her DOJ computer "apparently to access documents that may relate to her EEO cases," *id.* at 20.

way, by the plaintiff's race.  *See id.* at 22–23.  The Court concluded that "no reasonable jury could find that the plaintiff . . . was subjected to a hostile work environment or retaliation based on her race."  *Id.* at 23.  Consequently, the Court granted summary judgment to the defendant on all counts and dismissed this action.[4]  *Id.*; Order at 1, ECF No. 72.

The plaintiff now seeks to alter the judgment against her pursuant to Federal Rule of Civil Procedure 59(e).  Pl.'s Mot. at 1.  The defendant timely filed an opposition to the motion, Def.'s Opp'n Pl.'s Mot. ("Def.'s Opp'n"), ECF No. 74, and the plaintiff did not file a reply.  This motion is now ripe for resolution.

## II.    LEGAL STANDARD

A motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e) "'is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  *Messina v. Krakower,* 439 F.3d 755, 758 (D.C. Cir. 2006) (quoting *Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C. Cir. 1996)).  A district court's denial of a request for this extraordinary relief is reviewed only for abuse of discretion.  *See Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9, 17 (D.C. Cir. 2015) (stating that "'[r]econsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly.'" (quoting 11 Charles Alan Wright et al., FEDERAL PRACTICE & PROCEDURE § 2810.1 (3d ed. 2012)); *Dyson v. District of Columbia*, 710 F.3d 415, 420 (D.C. Cir. 2013); *Messina,* 439 F.3d at 759; *Anyanwutaku v. Moore*, 151 F.3d 1053, 1058 (D.C. Cir. 1998).

---

[4] While summary judgment was granted to the defendant on all counts, the Court dismissed those portions of the plaintiff's Rehabilitation Act claims that referred to events that occurred after the ADA Amendments took effect for lack of subject matter jurisdiction, since the plaintiff failed to exhaust her administrative remedies as to those claims. *Smith*, 2015 WL 2265100, at *20 n.24.

Absent a demonstrated intervening change of controlling law or new evidence, the law is well-settled that litigants may not use Rule 59(e) either to repeat unsuccessful arguments or to assert new but previously available arguments. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008). As the Supreme Court observed, "Rule 59(e) permits a court to alter or amend a judgment, but it may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Id.* (internal quotation marks and citation omitted); *see also Messina,* 439 F.3d at 759 (finding no error in denying Rule 59(e) motion where "motion did nothing more than rely on the same arguments that [the movant] originally made.") (internal quotation marks and citation omitted). This is because "Rule 59(e) motions are aimed at reconsideration, not initial consideration," and arguments raised for the first time on a Rule 59(e) motion may be deemed "waived." *GSS Grp. Ltd. v. Nat'l Port Auth*., 680 F.3d 805, 812 (D.C. Cir. 2012); *see also District of Columbia v. Doe*, 611 F.3d 888, 896 (D.C. Cir. 2010) ("[A]n issue presented for the first time in a motion pursuant to Federal Rule of Civil Procedure 59(e) generally is not timely raised; accordingly, such an issue is not preserved for appellate review unless the district court exercises its discretion to excuse the party's lack of timeliness and consider the issue."); *but see City of New York v. Nat'l R.R. Passenger Corp.*, 776 F.3d 11, 17 (D.C. Cir. 2015) (declining to consider on appeal plaintiff's "reformulated" theory of claim, noting that "a party seeking to raise a new issue on appeal should first present it to the district court pursuant to a Rule 59(e) or 60(b)(6) motion" since the D.C. Circuit "continue[s] to insist that a party wishing to raise a new issue after judgment first advance it before the district court"). Thus, "Rule 59(e) is not a vehicle to present a new legal theory that was available prior to judgment," *Patton Boggs LLP v. Chevron Corp*., 683 F.3d 397, 403 (D.C. Cir. 2012), or "a chance for [a party] to correct poor strategic choices," *SEC v. Bilzerian*, 729 F. Supp. 2d 9, 15

4

(D.D.C. 2010).  *See also Kattan ex rel. Thomas v. District of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993) ("[T]his Court has recognized that a losing party may not use a Rule 59 motion to raise new issues that could have been raised previously.").  "The strictness with which such motions are viewed is justified by the need to protect both the integrity of the adversarial process in which parties are expected to bring all arguments before the court, and the ability of the parties and others to rely on the finality of judgments." *U.S. Commodity Futures Trading Comm'n v. McGraw-Hill Cos., Inc.*, 403 F. Supp. 2d 34, 36 (D.D.C. 2005); *accord Silk v. Sandoval*, 435 F.2d 1266, 1268 (1st Cir. 1971) (acknowledging "the complementary interest in speedy disposition and finality, clearly intended by Rule 59").

To constitute "clear error" within the meaning of Rule 59(e), courts have required "'a very exacting standard,'" *Bond v. U.S. Dep't of Justice*, 286 F.R.D. 16, 22 (D.D.C. 2012) (quoting *Lightfoot v. District of Columbia*, 355 F. Supp. 2d 414, 422 (D.D.C. 2005)), such that the "final judgment must be 'dead wrong' to constitute clear error," *Lardner v. FBI*, 875 F. Supp. 2d 49, 53 (D.D.C. 2012) (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)).  Indeed, the Seventh Circuit has vividly observed that "[t]o be clearly erroneous, a decision must strike [a court] as more than just maybe or probably wrong; it must . . . strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish." *Parts & Electric Motors*, 866 F.2d at 233.  Hence, *a fortiori*, "'[m]ere disagreement does not support a Rule 59(e) motion.'"  *United States ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002) (quoting *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993)).

Finally, although "[t]he term 'manifest injustice' eludes precise definition," *Roane v. Gonzales*, 832 F. Supp. 2d 61, 64 (D.D.C. 2011), it is clear that "manifest injustice" is an

exceptionally narrow concept in the context of a Rule 59(e) motion.  The D.C. Circuit has said

that manifest injustice arises from "rulings that upset settled expectations—expectations on

which a party might reasonably place reliance," *Qwest Servs. Corp. v. FCC*, 509 F.3d 531, 540

(D.C. Cir. 2007), and does not result merely because a harm may go unremedied, *accord Assoc.*

*Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 536 (1983)

("[T]he judicial remedy cannot encompass every conceivable harm that can be traced to alleged

wrongdoing.").  Instead, "manifest injustice" must entail more than just a clear and certain

prejudice to the moving party, but also a result that is fundamentally unfair in light of governing

law.

## III.    DISCUSSION

As the defendant correctly points out, the plaintiff makes no attempt to offer new

evidence or assert an intervening change of law to justify her motion.  Def.'s Opp'n at 3; *see*

*generally* Pl.'s Mot.  Thus, it is only necessary to address whether the plaintiff has raised a "clear

error" in the Court's previous opinion sufficient to warrant reconsideration of the judgment after

its entry.  *See Messina*, 439 F.3d at 758.  The plaintiff has not done so.

The plaintiff contends that the Court "applied incorrect legal standards in considering

Defendant's summary judgment motion and committed clear error with some of its findings."

Pl.'s Mot. at 2.  In support of this contention, the plaintiff argues, first, that the Court "applied an

incorrect standard" to determine "whether [the plaintiff] presented triable issues."  *Id.*  Next, the

plaintiff strains to revive her Rehabilitation Act claims by arguing the Court erred in determining

that the plaintiff's right-hand CTS was not a disability under the Rehabilitation Act in effect

prior to the ADA Amendments of 2008, *id.* at 5, and in its treatment of alleged events occurring

after January 1, 2009, when the ADA Amendments took effect, *id.* at 9–12.  Finally, the plaintiff

criticizes the Court's consideration of her Title VII claims for incorrectly applying a correctly articulated legal standard. *Id.* at 13–19. The Court is not persuaded by any of these arguments, each of which is addressed in turn.

### A.    The Correct Summary Judgment Standard Was Applied

First, the plaintiff contends that her own self-serving, hearsay statements, which were uncorroborated by any external evidence and contradicted by witnesses having direct knowledge of the facts, raised issues of material fact sufficient to defeat summary judgment. Pl.'s Mot. at 2–3. According to the plaintiff, rejecting such evidence, standing alone, violates the requirement under Federal Rule of Civil Procedure 56 that all reasonable inferences be drawn in favor of the non-moving party. *Id.* at 3. Quoting the Supreme Court's caution in *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014), that courts "must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions," Pl.'s Mot. at 3, the plaintiff contends that this Court's opinion improperly weighed the evidence against the plaintiff.

The plaintiff's reliance on *Tolan* is misplaced. In *Tolan*, the Supreme Court considered an alleged excessive force case, pursuant to 42 U.S.C. § 1983, involving at least six witnesses— four family members and two police officers. 134 S. Ct. at 1863–64. In reviewing the facts offered at summary judgment, the Supreme Court relied upon statements from multiple witnesses, including from persons not otherwise involved as parties in the case, to determine that a genuine issue of material fact sufficient for trial existed. *See id.* at 1866–67. For instance, the Supreme Court noted the discrepancy between the lower court's finding that the location where the alleged incident of excessive force occurred was "dimly-lit," and directly contrary testimony from the plaintiff's father that the area was illuminated by a non-decorative gas lantern, as well as statements from at least three witnesses that the area was lit by two motion-activated spotlights. *Id.* As another example, the Supreme Court recited the testimony from two

witnesses, the plaintiff and his mother, describing the victim of the alleged excessive force as being on his knees when he was shot, while a third witness, another police officer on the scene, described the plaintiff as "on both feet . . . looking as if he was going to move forward." *Id.* at 1867. In the face of this contradictory eyewitness testimony regarding the lighting, the victim's position during the shooting, and other "central facts of this case," *id.* at 1866, the Supreme Court concluded that "[b]y weighing the evidence and reaching factual inferences contrary to [the plaintiff's] competent evidence," summary judgment was erroneously granted, *id.* at 1868.

By contrast, in the instant matter, the plaintiff presented no evidence other than her own self-serving statements that she was subjected to discrimination and a hostile work environment. Her statements that she was subjected to "discriminatory work assignments" were directly refuted by multiple witnesses with "first-hand knowledge of the relevant facts." *Smith*, 2015 WL 2265100, at *21. The plaintiff's disparate treatment allegations were not accompanied by any evidence other than her own admittedly speculative assertions, without any documentary or testimonial evidence from any other witness, despite ample opportunity for discovery. *Id.* Unlike in *Tolan*, the plaintiff did not submit any evidence from other witnesses or other documentary evidence on any issue of material fact such that drawing an inference in favor of the plaintiff was either reasonable or warranted. *See Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007) (noting that plaintiff's own statement amounting to "sheer hearsay . . . counts for nothing on summary judgment" (citing *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000)).

*Tolan* does not overturn the multiple cases in the D.C. Circuit holding that "inadmissible evidence" and mere speculation, "counts for nothing" at the summary judgment stage. *Gleklen*, 199 F.3d at 1369. Moreover, *Tolan*, and this Court's opinion in *Smith*, are entirely consistent

with Federal Rule of Civil Procedure 56(e), which provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," a court may "consider the fact undisputed for the purposes of the motion" and grant summary judgment to the moving party, so long as "the motion and supporting materials . . . show that the movant is entitled to it." FED. R. CIV. P. 56(e)(2–3). Indeed, the *Tolan* Court expressly cabined its ruling, stating that, on remand, the facts cited by the Supreme Court were not "the only facts that the [Circuit Court] should consider, or that no other facts might contribute to the" resolution of the ultimate issue in that case. *Tolan*, 134 S. Ct. at 1868.

The D.C. Circuit has noted that "the objective of summary judgment" is "to prevent unnecessary trials." *Gleklen*, 199 F.3d at 1369. Summary judgment would be virtually unachievable if Rule 56 were construed as the plaintiff urges and the non-moving party could create a genuine issue of material fact by doing no more than simply disagreeing with the movant's documentary evidence and testimony from knowledgeable witnesses. The plaintiff must do more than merely assert as "facts" her beliefs about material issues. Instead, beliefs that are uncorroborated—and, to a large extent, contradicted—by other witnesses or documentary evidence does not amount to competent evidence sufficient to defeat summary judgment, particularly when the factual assertions are susceptible to corroboration after an ample opportunity for discovery.[5] *See Giles v. Transit Emps. Fed. Credit Union*, No. 14-7055, 2015

---

[5] The plaintiff's assertion that "[s]ummary judgment should be issued sparingly against plaintiffs in employment discrimination cases," Pl.'s Mot. at 4, is unsupported by Supreme Court and D.C. Circuit precedent. The plaintiff relies primarily on two cases, *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 137 (2000), and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803 (1973). Pl.'s Mot. at 4–5. Neither case involved a motion for summary judgment. *See McDonnell Douglas*, 411 U.S. at 797 (noting district court resolved case on motion to dismiss); *Reeves*, 530 U.S. at 138 (noting case was resolved after trial and "the District Court twice denied oral motions by respondent for judgment as a matter of law"). Moreover, in both cases, the Supreme Court held that "sufficient evidence for the trier of fact to disbelieve the defendant's legitimate, nondiscriminatory explanation for its action," *Reeves*, 530 U.S. at 137, was necessary to support a ruling the plaintiff's favor. *See McDonnell Douglas*, 411 U.S. at 807 (holding that plaintiff was required "to demonstrate that [the defendant's] assigned reason for refusing to re-employ was a pretext or discriminatory in its application"). In affirming a district court's grant of

WL 4217787, at *5 (D.C. Cir. July 14, 2015) (holding that plaintiff "cannot create a dispute of material fact by distorting testimony and then complaining of a lack of documentation" when documentary evidence in record contradicted plaintiff's otherwise uncorroborated statement).  In some circumstances, even evidence generally *supporting* the plaintiff's assertions, provided by a disinterested witness, can be insufficient to defeat a motion for summary judgment.  *See id.* (finding, in ADA action, co-workers' "positive view of [the plaintiff's performance" to be "of exceptionally limited relevance" when not communicated to supervisors).  Thus, the Court applied the correct standard by drawing all reasonable inferences in favor of the plaintiff, while correctly stopping short of accepting all factual assertions of the plaintiff in the face of directly contrary evidence when the plaintiff's assertions derived from inadmissible evidence.[6]  *See id.* at *6 (crediting, on summary judgment, defendant's testimony, supported by documentary evidence, over plaintiff's uncorroborated assertions to the contrary).

---

summary judgment in an ADA case, the D.C. Circuit recently reaffirmed the applicability of Rule 56 to discrimination cases and, relying in part on *Reeves*, stated "an employer is entitled to summary judgment where 'the plaintiff created only a weak issue of fact as to whether the employer's [explanation] was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination [has] occurred.'"  *Giles v. Transit Emps. Fed. Credit Union*, No. 14-7055, 2015 WL 4217787, at *11 (D.C. Cir. July 14, 2015) (quoting *Reeves*, 530 U.S. at 148) (first alteration added).  Specifically, the *Giles* court noted that "there are 'instances where, although the plaintiff has . . . set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.'"  *Id.* at *7 (quoting *Reeves*, 530 U.S. at 148).  This case is such an instance, even if the plaintiff had set forth sufficient evidence, which she has not.

[6] Additionally, the plaintiff ignores another fundamental—and fatal—flaw in her Complaint: the utter lack of any evidence of causation.  *See Giles*, 2015 WL 4217787, at *11 (affirming summary judgment in ADA case where plaintiff made "exceedingly weak" prima facie case, including no evidence of causation).  While it is true that disparate treatment and circumstantial evidence may form the basis of a discrimination claim, in such cases the plaintiff must present statistics or other evidence sufficient to "permit the inference that, absent other explanation, the disparity more likely than not resulted from illegal discrimination."  *See Aliotta v. Bair*, 614 F.3d 556, 563 (D.C. Cir. 2010) (citing *Segar v. Smith*, 738 F.2d 1249, 1274 (D.C. Cir. 1984)).  Here, the "plaintiff has not alleged the use of racially discriminatory comments or other overt acts of racism in her workplace" or comments or actions related to her disability.  *Smith*, 2015 WL 2265100, at *20.  The plaintiff's burden, then, was to present sufficient evidence, statistical or otherwise, from which an inference could be drawn that "the disparity [in treatment] more likely than not resulted from illegal discrimination."  *Aliotta*, 614 F.3d at 563.  Since the plaintiff failed utterly to present any such evidence, the plaintiff failed to prove that the alleged discrimination, hostile work environment, and retaliation were in any way related to her race or alleged disability.  Consequently, the plaintiff's case fails because she did not offer any evidence that any of the alleged incidents were *caused by* illegal discrimination.

In any event, the issue of the appropriate standard was briefed by the plaintiff during summary judgment. *See* Pl.'s Opp'n Def.'s Mot. Summ. J. ("Pl.'s MSJ Opp'n") at 23, ECF No. 59-1. Thus, the plaintiff's argument is merely an attempt to "relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment," *Exxon Shipping Co.*, 554 U.S. at 485 n.5, which is improper on a Rule 59(e) motion. This argument is rejected as a ground for reconsideration.

### B.   The Plaintiff Was Not Disabled Within The Meaning Of The Pre-ADA Amendments To The Rehabilitation Act

The plaintiff does not challenge the Court's use of the Rehabilitation Act's definition of "disability" in effect prior to 2009 to evaluate the alleged pre-2009 incidents, *see generally* Pl.'s Mot., but nonetheless contends that the Court erred in determining that she was not disabled under that version of the law, Pl.'s Mot. at 5–9. The plaintiff's arguments are unpersuasive. She first cites a number of out-of-circuit cases purportedly holding that CTS "is a disability under the" pre-ADA Amendments definition of disabled, but none of those cases is binding on this Court. *Id.* at 6. Additionally, none of those decisions are persuasive since none post-date *Toyota Motor Manufacturing Kentucky, Inc. v. Williams* (*Toyota*), 534 U.S. 184 (2002), and pre-date the ADA Amendments. *See* Pl.'s Mot. at 6. Consequently, none of the cases cited by the plaintiff stand for the proposition that, post–*Toyota*, the pre-Amendments ADA always supported CTS as a disability. In any event, the plaintiff misconstrues the Court's holding: the Court did not find that CTS could never be a disability within the meaning of the Rehabilitation Act, either before or after the ADA Amendments; rather, the Court found that *the plaintiff* had failed to prove that *her* CTS was a disability. *See Smith*, 2015 WL 2265100, at *18–20.[7]

---

[7] The plaintiff refers to one case involving a plaintiff with CTS where the requests for accommodation occurred after *Toyota* and before the ADA Amendments, though the decision was rendered after the ADA Amendments took effect. *See* Pl.'s Mot. at 6 (citing *Giannattasia v. City of New York*, 2011 WL 4629016, at *6 (E.D.N.Y. Sept. 30,

The plaintiff further misinterprets the Court's decision as reading *Toyota* to require "a medical condition . . . to impair an employee's major life activity completely to qualify as a disability." Pl.'s Mot. at 6. The Court did not so read *Toyota*. Rather, *Toyota*, until the law was changed by the ADA Amendments, imposed "a demanding standard for qualifying as disabled," such that "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Smith*, 2015 WL 2265100, at *18 (quoting *Toyota*, 534 U.S. at 197–98). The facts in *Toyota* were closely analogous to the facts in the instant matter, except that the plaintiff in *Toyota* was arguably more impaired by her CTS than the plaintiff here. *See id.* The Supreme Court held in *Toyota*, however, that the plaintiff in that case was not disabled within the meaning of the pre-Amendments ADA, *Toyota*, 534 U.S. at 202, leading inexorably to the Court's conclusion that the plaintiff in this matter was similarly not disabled, *Smith*, 2015 WL 2265100, at *19 ("Unlike the plaintiff in *Toyota*, who was entirely unable to perform certain activities, both at work and at home, the plaintiff in the instant matter may have experienced discomfort due to the CTS in her right hand, but was still able to complete most of her daily tasks, at work and at home.") (internal citations omitted).

The plaintiff had the opportunity to argue this point during summary judgment briefing, since it was raised and argued extensively by the defendant, *see* Def.'s Mem. Supp. Def.'s Mot. Summ. J. ("Def.'s MSJ Mem.") at 21, 29–33, ECF No. 55, but the plaintiff chose to direct much of her "argument on this point . . . toward whether the defendant provided reasonable accommodations for her medical condition," *Smith*, 2015 WL 2265100, at *18. Rule 59(e)

---

2011)). The *Giannattasia* decision is inapposite. In *Giannattasia*, the Court did not consider whether CTS constituted a disability, but only addressed whether the defendant had sufficient notice of the plaintiff's condition. *Id.* Thus, this case sheds no light on whether CTS constituted a disability under the differing standards of the pre-Amendments ADA or the post-Amendments ADA. *See generally id.*

motions are not opportunities to revisit failed litigation strategies. *See Wannall v. Honeywell, Inc.*, 775 F.3d 425, 430 (D.C. Cir. 2014) (affirming this Court's decision on motion for reconsideration by holding plaintiff to "strategic choice" that ultimately resulted in dismissal of action); *Bilzerian*, 729 F. Supp. 2d at 15. Thus, in addition to being incorrect legally, the plaintiff's argument on this score is an attempt at the proverbial "second bite at the apple" that is improper on a Rule 59(e) motion.[8] This argument is rejected as a ground for reconsideration.

### C.   The Court Properly Rejected Plaintiff's Post-2008 Disability Allegations

The plaintiff makes three interrelated arguments that the Court erred in its treatment of her post-2008 disability allegations. Pl.'s Mot. at 9–12. According to the plaintiff, these post-2008 disability allegations are set out in eleven of almost 300 paragraphs in the Complaint: paragraphs "210, 214, 215, 216, 217, 225, 229, 230, 234, 235 and 237." *Id.* at 12. These eleven paragraphs allege, in sum, that: (1) "after a year and half of interaction," the plaintiff was not accommodated with "compatible voice activated software, Compl., ¶ 210; (2) "[d]uring the relevant period" and/or "[o]n various occasions between 2009 and the present," the plaintiff requested reassignment as a reasonable accommodation but those requests were denied, *id*. ¶¶ 214–17; and (3) in 2009 and "[t]hroughout 2010," the plaintiff was subject to the same medical restrictions of not lifting or carrying over ten pounds, but "the Agency continued to ignore her medical restrictions and failed to provide full reasonable accommodations," *id*. at 225, 229, 230, 234–35, 237. The plaintiff argues that the Court erroneously ignored these post-2008 allegations

---

[8] The plaintiff cites one case from another district for the proposition that "[t]he fact that the employer provided an accommodation, but then revoked it is a fact for a jury to consider in deciding whether Plaintiff had a disability under the ADA." Pl.'s Mot. at 9 (citing *Hodgetts v. City of Venice, Fla.*, 794 F. Supp. 2d 1265, 1275 (M.D. Fla. 2011)). *Hodgetts* does not stand for the proffered proposition. *Hodgetts* addressed whether the plaintiff was "obviously disabled" such that he did not need to ask for reasonable accommodations. *Hodgetts*, 794 F. Supp. 2d at 1274–75. The *Hodgetts* court found sufficient evidence in the record showing that the defendant employer was aware of the plaintiff's disability because the employer had extended, and then removed, disability accommodations. *Id.* at 1275. The issue whether the plaintiff was actually disabled, as opposed to being perceived to be disabled, was not before the *Hodgetts* court. Thus, *Hodgetts* is inapposite.

in considering her Rehabilitation Act claims in Counts II and IV, Pl.'s Mot. at 11–12, and, instead, should have treated these post-2008 allegations as sufficient to overcome any deficiency in her pre-2009 right-hand CTS disability allegations, Pl.'s Mot. at 9–10, particularly when combined with her allegations of left-hand CTS disability.  These arguments are addressed below.

First, contrary to the plaintiff's view, the Court correctly characterized her Rehabilitation Act claims when stating that "the plaintiff makes no reference to any events occurring after January 2009 in Count II or Count IV, the counts raising Rehabilitation Act claims."  Pl.'s Mot. at 11 (quoting *Smith*, 2015 WL 2265100, at *19).  Count II cites the following as grounds for the plaintiff's disability discrimination claim under the Rehabilitation Act: a hostile work environment "beginning in July 2007," Compl. ¶ 251; the plaintiff's CTS, which began in March 2007, *id.* ¶ 254; the alleged denial by the defendant of reasonable accommodations for her CTS and "not satisfying the work restrictions ordered by doctors for her hand/wrist condition," *id.* ¶ 257; the defendant's "repeatedly denying [the plaintiff] advanced sick leave, while granting it to similarly situated employees," *id.*; and "by continuously not engaging in the interactive process with respect to her disabilities," *id.*  Count IV refers only to an alleged incident in August 2007, when the plaintiff's supervisor allegedly bumped into the plaintiff while the plaintiff was leaving her cubicle and unspecified retaliation caused by the defendant "continuing to discriminate against her with regard to her disabilities," *id.* ¶ 277.  Thus, no date or specific incident is referenced in either Count II or Count IV that occurred after January 1, 2009.

The plaintiff contends that the Court's error stems from over-looking the boiler-plate verbiage in Counts II and IV, paragraphs 248 and 271, respectively, that "adopt[] and incorporate[] by reference" all of the previous paragraphs in the Complaint, which prior

paragraphs include paragraphs "210, 214, 215, 216, 217, 225, 229, 230, 234, 235 and 237," Pl.'s Mot. at 12, referring to post-January 2009 events.  Plainly, none of the alleged incidents set out in those cited paragraphs were expressly described in Counts II or IV as factual support for the legal claims for violation of the Rehabilitation Act.

In any event, the Court addressed the events alleged in paragraphs 224 through 239 of the Complaint and found them to be insufficient to raise a claim for hostile work environment or retaliation.  *See Smith*, 2015 WL 2265100, at *19.[9]  The Court noted that these events were not referred to in the EEO Complaint the plaintiff filed in 2007 and, to the extent those paragraphs alleged discrete events occurring after January 1, 2009, the plaintiff provided no evidence that she had taken the necessary steps to exhaust her remedies as to those events.  *Id.*[10]

Second, even if her right-hand CTS did not qualify as a disability pre-ADA Amendments, the plaintiff posits that the Court "erred in dismissing Plaintiff's Rehabilitation Act claims after January 1, 2009," when the ADA Amendments took effect, "by holding that she was required to initiate a new EEO complaint over such claim through the Agency," Pl.'s Mot. at 9, and by not treating the "Defendant's duty to accommodate Plaintiff's CTS" as "continu[ing] into January

_____

[9] The five paragraphs in the Complaint cited in the plaintiff's motion that are not discussed directly in the Mem. Op., namely, paragraphs 210 and 214–17, describe alleged failures to accommodate the plaintiff's CTS with "compatible voice activated software" or reassignment to the plaintiff's preferred office and, with the exception of paragraph 217, contain no dates, which would alert the reader these paragraphs pertain to post-2009 events. Compl. ¶¶ 210, 214–17.  Ultimately, however, none of these paragraphs contradict the Court's holding that the plaintiff had failed to plead, let alone come forward with specific evidence, that she had exhausted her administrative remedies as to the alleged events that occurred after January 1, 2009.  *Smith*, 2015 WL 2265100, at *19.

[10] The plaintiff contends that the Court's citation to *Kapache v. Holder*, 677 F.3d 454, 461 n.7 (D.C. Cir. 2012) does not support the Court's decision because "all of the claimed disability discrimination" in *Kapache* preceded the ADA Amendments.  Pl.'s Mot. at 10.  The plaintiff misreads the Mem. Op.  *Kapache* was cited for the proposition that "the pre-2009 definitional standard" for what constitutes a disability "applies to the vast majority of conduct alleged in this matter."  *Smith*, 2015 WL 2265100, at *18.  The *Kapache* court held that because the events at issue in *Kapache* occurred before the ADA Amendments took effect, the pre-Amendments definition of disability applied.  *Kapache*, 677 F.3d at 461 n.7.  Consequently, the Court's application of the pre-ADA Amendments definition of "disability" to the pre-2009 conduct is entirely supported by *Kapache*.  *See Smith*, 2015 WL 2265100, at *18 ("Thus, the pre-2009 definition of 'disability' applies to the alleged conduct that occurred prior to January 1, 2009.").

2009, when the [post-Amendments ADA] governed its actions," *id*. at 10.  According to the plaintiff, "a court complaint 'may encompass any kind of discrimination like or related to allegations alleged in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission,'" Pl.'s Mot. at 9 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)), and, consequently, the plaintiff was not required to exhaust her administrative remedies for any claims after January 1, 2009, when her CTS might have been covered by the Rehabilitation Act, *see Smith*, 2015 WL 2265100, at *19 (assuming, without deciding, that the plaintiff "could prove she were disabled within the meaning of the ADA Amendments" beginning in 2009).

The Court addressed and rejected this argument in its opinion, noting that every incident allegedly occurring after January 1, 2009, when the ADA Amendments took effect, was "discrete from the issues raised in her 2007 EEO Complaint."  *Smith*, 2015 WL 2265100, at *19.  To the extent that the plaintiff argues that the defendant had a continuing "duty to accommodate Plaintiff's CTS," Pl.'s Mot. at 10, the plaintiff is mistaken: the defendant had no duty to accommodate the plaintiff's CTS prior to January 1, 2009, since the plaintiff was not disabled under the meaning of the Rehabilitation Act during that period.  *See id*.  The defendant could have no continuing "duty," since it had no "duty" in the first instance.  As a result, the plaintiff was required to initiate a new EEOC complaint when her disability—assuming, *arguendo*, that her CTS is a disability under the post-Amendments version of the ADA—manifested itself.  As the Court noted in *Smith*, the plaintiff "does not plead, nor has she submitted any evidence after discovery, that she made any attempt to pursue, administratively, any Rehabilitation Act claims based on events occurring in 2009 through the appropriate EEO channels."  *Smith*, 2015 WL

2265100, at *19.  While the Court did not elaborate on the basis for this conclusion, the reasoning is dictated by applicable precedents.

The plaintiff's position appears to be that even if her right-hand CTS did not constitute a disability under the pre-Amendments Rehabilitation Act, since this condition persisted into 2009, when it may have arguably qualified as an actionable disability, all of the defendant's conduct should be considered in support of her claim.  *See* Pl.'s Mot. at 9–10 (arguing the defendant's "duty to accommodate Plaintiff's CTS continued into January 2009, when the [ADA Amendments] governed its actions").  The plaintiff's position would result in giving the ADA Amendments retroactive effect, which is barred by binding case law.  *See Lytes v. D.C. Water & Sewer Auth.*, 572 F.3d 936, 940 (D.C. Cir. 2009).

The D.C. Circuit in *Lytes* examined the ADA Amendments and noted that Congress' "decision to delay the effective date" of the Amendments "would make no sense" if it was to apply retroactively.  572 F.3d at 940.  The *Lytes* court held that the ADA Amendments "broadened the class of employees entitled to reasonable accommodation."  *Id.* at 942. Consequently, "[t]o hold the [defendant's] refusal to accommodate [the plaintiff] was unlawful under the new, broader [statute] but not under the pre-Amendments ADA [] would be to give the [ADA Amendments] the disfavored retroactive effect."  *Id.*

The *Lytes* logic is dispositive in the instant matter.  The plaintiff was not disabled under the Rehabilitation Act in effect when she made her EEO Complaint in 2007 or when she made requests for reasonable accommodation prior to January 1, 2009.  *Smith*, 2015 WL 2265100, at *19.  Thus, the defendant's "settled expectation[]" prior to January 1, 2009, was that the plaintiff was not entitled to any reasonable accommodation.  *See Lytes*, 572 F.3d at 940.  The plaintiff had no legally cognizable claim under the Rehabilitation Act until, arguably, January 1, 2009.  If, as

the plaintiff contends, the plaintiff had no obligation after January 1, 2009, when the ADA Amendments took effect, to request reasonable accommodations under the new standard, and instead was allowed to rely on the previous, invalid, request, the ADA Amendments would be given the prohibited retroactive effect by imposing a new duty on the defendant on January 1, 2009 that did not exist on December 31, 2008.  Consequently, to "protect settled expectations," *id.*, the plaintiff was required to request reasonable accommodations, and be evaluated for her eligibility for such accommodations, when the law changed on January 1, 2009 and, arguably, included her CTS within the meaning of the term "disabled."

This conclusion is further bolstered by the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan* (*Morgan*), 536 U.S. 101 (2002).  In *Morgan*, a Title VII discrimination and retaliation case, the Supreme Court held that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act," and "[t]he existence of past acts and the employee's prior knowledge of their occurrence [] does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed."  536 U.S. at 113.  As explained *supra*, any acts that occurred prior to January 1, 2009 could not have been discriminatory based on the Rehabilitation Act because the plaintiff was not disabled within the meaning of the Rehabilitation Act and, therefore, had no rights under the Act.

The plaintiff refers to the defendant's action as "continuing," *see, e.g.*, Pl.'s Mot. at 9–10, but the *Morgan* Court explicitly rejected the so-called "continuing violations" doctrine with respect to discriminatory actions where a "[d]iscrete act[] such as termination, failure to promote, denial of transfer, or refusal to hire" can be identified, *Morgan*, 536 U.S. at 114.  The majority view on this Court is that *Morgan* requires "a plaintiff alleging discrete acts of discrimination or

retaliation—including those filed after an administrative complaint—[to] exhaust his administrative remedies with respect to the later-occurring incidents even if they are related to the claims in the administrative complaint." *Mount v. Johnson*, 36 F. Supp. 3d 74, 84 (D.D.C. 2014) (collecting cases and noting that "[t]he D.C. Circuit has repeatedly declined to weigh in on this matter").

The plaintiff urges this Court to follow the minority view in this district that "appl[ies] the D.C. Circuit's pre-*Morgan* 'like or reasonabl[y] related' test articulated in *Park v. Howard University*, which permits unexhausted discrimination and retaliation claims to proceed as long as the claims are 'like or reasonably related to the allegations of [a prior administrative] charge.'" *Hicklin v. McDonald*, 2015 WL 3544449, at *3 (D.D.C. June 8, 2015) (internal citation omitted); Pl.'s Mot. at 9. This Court declines the invitation and has already held that the plaintiff was required to exhaust her administrative remedies as to the post-2008 incidents, conforming to the majority view. *Smith*, 2015 WL 2265100, at *19.

Regardless, under either the majority or the minority view of the Supreme Court's holding in *Morgan*, the plaintiff's claim fails. The plaintiff's 2007 EEO Complaint refers only to "the July 20, 2007 memorandum 'requiring [the plaintiff] to use sick or annual leave, or to use leave without pay (LWOP) to cover absences associated with the 30-day no keyboarding restriction invoked by her physician,' and the August 14, 2007 incident where the plaintiff 'allege[d] that her 1st Line Supervisor bumped her while existing [sic] her cubicle.'" *Smith*, 2015 WL 2265100, at *9 (internal citations omitted). The plaintiff does not plead, nor has she offered any evidence, that she exhausted her administrative remedies as to the discrete acts she alleges occurred after January 1, 2009, including the alleged search of her DOJ computer, Compl. ¶ 231, the October 9–10, 2009 instruction regarding the time she was to be at her desk

19

and reporting to her superiors about leaving the building, Pl.'s MSJ Opp'n at 19–20,[11] or the

November 9, 2009 "memorandum rejecting [the plaintiff's] doctor's medical restrictions," *id.* at

18.   Under the majority view, therefore, these incidents were not administratively exhausted and

cannot be the basis of any complaint of discrimination or retaliation.  *See Mount*, 36 F. Supp. 3d

at 84.

Under the minority view, the aforementioned post-January 1, 2009 conduct is not "like or

reasonably related to" the claims in the plaintiff's July 2007 EEO Complaint.  "[C]ourts that

adhere to this view have held that '[a]t a minimum, the . . . claims must arise from 'the

administrative investigation that can reasonably be expected to follow the charge of

discrimination,' but '[c]laims of [] ideologically distinct categories' of discrimination and

retaliation . . . are not 'related' simply because they [arise] out of the same incident.'"  *Hicklin*,

2015 WL 3544449, at *4 (internal citations omitted).  In the instant matter, the post-2008 events

complained of neither arose out of the same incident nor could have been "reasonably expected

to follow the charge of discrimination."  *See id.*  None of the incidents complained of had

anything to do with the 2007 memorandum instructing the plaintiff to use personal leave or

LWOP until she could return fully to her duties, nor did they have anything to do with the

bumping incident in August 2007.  The only links between the post-2008 alleged events and the

2007 EEO Complaint are that the supervisor who instructed the plaintiff to be at her desk when

her shift started was the same in October 2009 as in July and August 2007, and the plaintiff's

belief that the alleged hard drive search on her DOJ computer had something to do with her EEO

complaints.  *See* Pl.'s MSJ Opp'n at 19–20.  The plaintiff makes no attempt to show how her

post-2008 allegations, namely, increased monitoring and rejection of the plaintiff's medical

---

[11] The October 9–10, 2009 incident is not mentioned in the plaintiff's Complaint.  *See generally* Compl.

restrictions after the Department of Labor's Office of Workers' Compensation Programs determined the plaintiff was not eligible for workers' compensation, could have been reasonably expected to arise from the administrative investigation of her complaint about the August 2007 bumping incident and the July 2007 memorandum.  *See generally* Pl.'s MSJ Opp'n; Pl.'s Mot. In short, under either the majority or the minority view, the plaintiff failed to show that she exhausted administrative remedies as to the post-2008 incidents or that she was otherwise excused from doing so.[12]

Even were the plaintiff correct on this point, this argument, similarly to her other arguments, is merely an attempt to relitigate issues that have already been resolved, which is improper on a Rule 59(e) motion.[13]  *See Exxon*, 554 U.S. at 485 n.5; *Messina,* 439 F.3d at 759. This argument is rejected as a ground for reconsideration.

### D.     The Court Correctly Applied Title VII Law To Plaintiff's Retaliation and Hostile Work Environment Claims

The plaintiff made little effort to distinguish the allegations underlying her Title VII claims from those underlying her Rehabilitation Act claims, *see supra* note 3; *see generally* Compl., but to the extent that those claims could be distinguished, they were each evaluated,

---

[12] As for the related question of whether the plaintiff exhausted her administrative remedies as to her left-hand CTS, the plaintiff argues that this condition, which developed in December of 2008, was administratively exhausted since her left-hand CTS was "like or related to" the issues raised in her 2007 EEO Complaint pertaining to her right-hand CTS.  Pl.'s Mot. at 12.  The plaintiff did not raise this argument previously and, thus, this argument is waived. *Patton Boggs LLP*, 683 F.3d at 403.  Even were it not waived, the argument is untenable, since the right-hand CTS claim that *was* exhausted referred only to events that occurred in 2007, well before the plaintiff suffered any left-hand CTS symptoms.  Pl.'s Mot. at 12 (noting plaintiff's left-hand CTS "developed in December 2008"). Consequently, the plaintiff's left-hand CTS was never administratively exhausted, and the plaintiff presented no evidence that she even attempted to exhaust administratively this newly claimed disability that arose eighteen months after her properly exhausted claim regarding her right-hand CTS.  *Smith*, 2015 WL 2265100, at *19.

[13] If the Court were to consider the unexhausted claims, the outcome would not change.  None of the additional alleged incidents discussed by the plaintiff are anything more than the "immaterial slights" and "workplace disagreements" that "are not actionable under" civil rights laws.  *See Baird v. Gotbaum*, 2015 WL 4079546, at *4 (D.C. Cir. July 7, 2015) (internal quotation marks and citations omitted).  Although the plaintiff may "feel singled out" because of her past history with the defendant, Pl.'s MSJ Opp'n at 20, this subjective feeling is not sufficient under the objective test for a hostile work environment or for retaliation to raise the plaintiff's complaints to those actionable under the Rehabilitation Act.

both individually and in the totality of the circumstances, in the Mem. Op., *Smith*, 2015 WL 2265100, at *20–23.  The plaintiff disagrees with the assessment in the Mem. Op. of the plaintiff's Title VII retaliation claims as not raising a colorable claim of an adverse employment action, Pl.'s Mot. at 19–21, and the finding that the plaintiff's allegations were insufficient to raise a hostile work environment claim, *id.* at 13–19.  The plaintiff's disagreement, unsupported by any new evidence, change in law, or evidence of clear error, is insufficient to warrant a reconsideration of the decision.

The plaintiff argues that the Court improperly found that the plaintiff had failed to allege any adverse employment action colorable as a Title VII retaliation action.  Pl.'s Mot. at 19–20.  The plaintiff, not the Court, is mistaken.  The Court held that all of the actions alleged by the plaintiff, taken as true, would not meet the objective standard required to "dissuade[] a reasonable worker from making or supporting a charge of discrimination," *Smith*, 2015 WL 2265100, at *23, as required for an actionable retaliation claim, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  As the Court noted, "the plaintiff may have been upset by some of the incidents that occurred between 2007 and 2009," but "[u]nder an objective standard, none of the plaintiff's allegations rise to the level of an adverse action."  *Smith*, 2015 WL 2265100, at *23.

Once again, the plaintiff's argument is not legally colorable and was thoroughly addressed in initial summary judgment briefing.  Def.'s MSJ Mem. at 13–20; Pl.'s MSJ Opp'n at 26–32.  Thus, the plaintiff's instant motion for reconsideration amounts to an attempt to relitigate a lost argument.  *See Exxon*, 554 U.S. at 485 n.5; *Messina,* 439 F.3d at 759.  This argument is rejected as a ground for reconsideration.

Finally, the plaintiff's argument that the Court failed to consider her allegations regarding a hostile work environment in the totality of the circumstances is belied by the decision. Specifically, as the plaintiff concedes, Pl.'s Mot. at 13, the Court recognized that "hostile work environment claims must be examined in light of the totality of the circumstances," and found that the plaintiff had "failed to provide admissible evidence of any discriminatory actions as support for her allegations." *Smith*, 2015 WL 2265100, at *22.  Upon detailed examination of the plaintiff's accumulated allegations underlying her race discrimination claim, the Court did consider the events in the totality of the circumstances and found no causal link between the hostile work environment claims and the plaintiff's race. *See id.*  It also found that, under the required objective standard, there were no "tangible workplace consequences" that could "support a hostile work environment claim on summary judgment," and that the plaintiff presented no colorable "evidence from which a reasonable jury could infer that she was subjected to a hostile work environment on the basis of her race." *Id.*  Indeed, the D.C. Circuit recently reaffirmed that even a large number of "objectively immaterial . . . allegations" do not create a hostile work environment. *Baird v. Gotbaum*, 2015 WL 4079546, at *4–5 (D.C. Cir. July 7, 2015).  None of the events complained of by the plaintiff rise above the "petty insults, vindictive behavior, and angry recriminations" that courts have held, repeatedly, do not constitute actionable Title VII claims. *Id.* at *4 (quoting *Brooks v. Grundmann*, 748 F.3d 1273, 1277–78 (D.C. Cir. 2014)).  Her argument is, therefore, rejected as a ground for reconsideration.

*     *     *

To sum up, most of the plaintiff's arguments amount to improper attempts to relitigate issues already decided by this Court and, therefore, constitute improper grounds on which to grant a Rule 59(e) motion.  Moreover, in light of the D.C. Circuit's opinion in *Baird*, the

plaintiff's litany of "immaterial slights" is precisely the type of "long list of trivial incidents" that "is no more a hostile work environment than a pile of feathers is a crushing weight." *Baird*, 2015 WL 4079546, at *4; *see also Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013).

## IV.    CONCLUSION

The decision whether to grant a Rule 59(e) motion is left to the sound discretion of the District Court and is reviewed only for abuse of that discretion. *Mohammadi*, 782 F.3d at 17; *Dyson*, 710 F.3d at 420. Plaintiffs seeking reconsideration based on clear error must, therefore, meet a very high bar. The plaintiff has failed to clear that bar, and has presented no other new evidence or asserted a change in law to alter the Court's decision. Consequently, the plaintiff's motion is denied.

An Order consistent with this Memorandum Opinion will issue contemporaneously.


Date:  July 15, 2015                              _____

                                                  BERYL A. HOWELL
                                                  United States District Judge